THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FILED
NOV 2 5 2024
Clerk, US District Court
Middle District of Florida
Fort Myers, Florida

| | |
|---|---|
| JOSEPH DOLE, )<br>  Plaintiff, )<br> )<br>v. ) Case No. 98-83-CR-FTM-17<br> )<br>UNITED STATES OF AMERICA, )<br>  Defendant. | |

### PLAINTIFF'S MOTION TO UNSEAL RELATED RECORDS, PLEADINGS, OR TRANSCRIPTS, SEEMINGLY FILED UNDER SEAL IN THE ABOVE-NUMBERED CASE

Plaintiff, Joseph Dole (IDOC #K84446), *pro se,* and for the reasons set forth herein, hereby moves this Honorable Court for an Order to unseal any records, pleadings, or transcripts, that were filed under seal in the case of *United States of America v. Nathan Steffen,* Case No. 98-83-CR-FTM-17. In support of this motion, Plaintiff alleges the following:

OPENING

1. The seemingly UNDER SEAL records, pleadings, or transcripts that Plaintiff seeks to have unsealed are related to the following docket entries in *United States of America v. Nathan Steffen,* Case No. 98-83-CR-FTM-17:

> a. Docket No. 54, 05/03/1999 – RETURN of judgment executed as to Nathan Lee Steffen on 4/29/99 at FCI, Edgefield, SC (sll) (Entered: 05/04/1999);
> b. Docket No. 57, 08/18/2000 – PETITION on probation and supervised release as to Nathan Lee Steffen requesting modification of supervision (ORDER granting petition) (Signed by Judge John E. Steele) ctc (lap) (Entered 08/18/2000); and

1.

  c. Docket No. 58, 12/13/2000 - PETITION on probation and supervised release as to Nathan Steffen requesting modification of supevision (ORDER granting petition) (Signed by Judge John E. Steele) ctc (bjt ) (Entered: 12/13/2000).

2. According to "Shelly", a supervisor of the clerks at the United States District Court for the Middle District of Florida, in Ft. Myers, there are documents related to these docket entries that are sealed and have therefore been withheld from Plaintiff. <u>See Exhibit 1 - Affidavit of Shari Stone-Mediatore.</u>

3. Plaintiff has been unable to learn of, locate, or obtain any Court Order properly sealing any documents related to this case.

4. Plaintiff requests that if there are any documents related to this case that were properly sealed, that this Court unseal them and Order them to be disclosed to Plaintiff; or in the alternative, if there are documents related to this case that are being withheld from Plaintiff, but were not properly sealed, that the Clerk be Ordered to provide them to Plaintiff.

**BACKGROUND**

5. Plaintiff was charged and convicted of two counts of murder and kidnapping that occurred in 1998 in Illinois.

6. He was sentenced to natural life in prison, and has always maintained his innocence for the crimes he is currently serving a life sentence for.

7. There was no physical evidence connecting Plaintiff to the crimes and his conviction rested on the testimony of George Hernandez and Nathan Steffen.

8. George Hernandez testified that he did not see either of the murders or kidnappings take place, but that he helped dispose of the bodies.

9. George Hernandez would falsely claim that he had "mostly passed" a lie detector test with his story (which implicated Plaintiff, amd denied any involvement in the murders and kidnappings himself), and claimed that he only failed the polygraph because he left out some information about his theft of the van and work concealing the bodies. The prosecution never corrected this false testimony.

10. The fact that George Hernandez had failed the polygraph was disclosed, but the State never disclosed the actual questions he was asked, despite Plaintiff's repeated discovery requests specifically requesting them.

11. Many years later, Plaintiff, **pro se**, through civil litigation against the City of Chicago, would learn that during George Hernandez's polygraph exam he was asked if he had been present for and participated in the kidnappings and murders. He answered "no", and the result was "deception indicated."

12. While in Florida in 1998, Plaintiff was arrested on a warrant out of Illinois, and Nathan Steffen was subsequently charged in the above-numbered case with harboring a fugitive (i.e. Plaintiff).

13. Nathan Steffen was called as a witness and brought to testify both at the Grand Jury and in Plaintiff's criminal trial in Chicago, Illinois.

14. The lead Assistant State's Attorney prosecuting Plaintiff's criminal case was ASA Joseph Alesia.

15. Joseph Alesia has faced numerous allegations of prosecutorial misconduct, including **Brady** violations, and most recently made headlines as a defendant in **Ezell v. City of Chicago,** 18 C 1049, 18 C 1053, 18 C 1062, and 18 C 1068 (N.D. Ill), which last month settled for fifty million dollars ($50,000,000) (Quinn Meyers, "Chicago Will Pay $50 Million to 4 Men Wrongfully Convicted of 1995 Murders, Robbery," **Block Club Chicago,** June 12, 2024, https://blockclubchicago.org/2024/06/12/chicago-will-pay-50-million-to-4-men-wrongfully-convicted-of-1995-murders-robbery/. There, Alesia's alleged misconduct was that he had worked in concert with notorious associates of former Chicago Police commander, torture ringleader, and perjurer Jon Burge to coerce or fabricate confession evidence. **Ezell v. City of Chicago,** 18 C 1049 (N.D. Ill. Aug. 16, 2023).

16. Additionally, in Plaintiff's case, former ASA Alesia only disclosed a single disciplinary ticket for Nathan Steffen, and during direct examination solely ques-

3.

tioned Nathan Steffen about this single disciplinary infraction for possession of a "marijuana cigarette" while in FCI Edgefield, despite the fact that ASA Alesia had already received a March 14, 2000 Memorandum by Warden M. E. Ray stating that he had "received three disciplinary reports, resulting in sanctions." **See Exhibit 2.**

17. Nor did ASA Alesia disclose the fact that Nathan Steffen had received a two-level downward departure in the above-numbered case which was for his "substantial assistance" in Plaintiff's case. **See Exhibit 3.**

18. Not only was this fact not disclosed, but ASA Alesia would compound the prejudice to Plaintiff by then allowing Nathan Steffen to falsely testify that he had received no benefit from testifying and had no deals. **See Exhibit 4.**

19. To make matters worse, ASA Alesia, during rebuttal closing arguments, told the jury, "If there's anybody you must believe in this case it should be him [Steffen]... Where is his motive, his interest, his bias in testifying? ... ladies and gemtlemen, the evidence is there was no deal. There was nothing offered, given, promised, to Nathan Steffen for his testimony. In return for his statement." **See Exhibit 5.**

20. Nor did ASA Alesia ever disclose the fact that Nathan Steffen's bond had been revoked in the above-numbered case due to Steffen's failure to comply with drug testing. **See Exhibit 6.**

21. Plaintiff has always maintained that Nathan Steffen gave false testimony against him in exchange for some type of benefit, even when Plaintiff knew of no benefit Steffen received, because that was the only reason that made sense as to why Nathan Steffen would lie under oath against him.

22. ASA Alesia not only suppressed the polygraph examiner's notes related to George Hernandez, but also suppressed the additional disciplinary reports related to Nathan Steffen, suppressed the downward departure Steffen received, and suppressed the fact that both Hernandez and Steffen were also receiving additional undisclosed benefits while housed in the Cook County State's Attorney's Office's Inmate

All

Witness Protection Program Living Unit, all in an effort to prevent Plaintiff from having evidence to impeach the two main witnesses in a case where the only evidence against him were the words of incentivized witnesses who themselves admitted they never witnessed either the murders or kidnappings occur.

23. More recently, during Habeas Corpus proceedings in the U. S. District Court for the Northern District of Illinois, Eastern Division, Plaintiff discovered that Nathan Steffen seemingly had two additional criminal charges (for possession of cocaine near a secure facility with intent to distribute) that not only were never disclosed to Plaintiff prior to trial, but that seemingly disappeared, as no disposition could be found in LEADS. **See Exhibit 7.**

24. Steffen was also under investigation prior to Plaintiff's trial for threatening to kill his daughter's mother, a fact which was also not disclosed to Plaintiff prior to trial.

25. Curiously, the date of the additional cocaine charges (4/29/99) is the same date that Nathan Steffen was delivered to FCI Edgefield, which is the date noted in one of the docket entries (#54) that has sealed records attached to it, and coincides with the two additional disciplinary charges. (F. Exhibits 2, 3, and 7.

## PLAINTIFF'S AND THE PUBLIC'S RIGHT TO ACCESS COURT RECORDS

26. "[T[he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." **Nixon v. Warner Comme'ns, Inc.,** 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed. 570 (1978).

27. Courts "generally do not condition enforcement of this right on a proprietary interest in the document or upon a need for it as evidence in a lawsuit."**Id.**

28. This is because "public monitoring of the judicial system fosters important values of quality, honesty, and respect for our legal system." **Siegle v. Putnam Invs., Inc.,** 147 F.3d 7, 9-10 (1st Cir. 1998): **F.T.C. v. Standard Fin. Mgmt. Corp.,** 830 F.2d 404, 410 (1st Cir. 1987) (" The appropriateness of making court

5.

files accessible is accentuated in cases where the government is a party; in such cases the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch.").

29. Accordingly, "[t[he commom law presumes a right of public access to judicial records." **Siegle,** 147 F.3d at 9-10.

**30.** On top of that general common law right, the First Amendment provides a "right of access to certain criminal proceedings and materials submitted therein." **United States v. Kravetz,** 706 F. 3d 47, 52 (1st Cir. 2023); **Anderson v. Cryovac, Inc.,** 805 F. 2d 1, 6-7 (1st Cir. 1986) (reiterating that "open trials have a 'community therapeutic value,' because they assure the public that the process is fair and just.").

31. Indeed, the public interest is strongest in materials submitted and events that occur during a criminal trial. See **Richmond Newspapers v. Virginia,** 448 U.S. 555, 575, 100 S.Ct. 2814, 65 L.Ed. 973 ("Plainly it would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted...."); **id.** at 566-67, 100 S.Ct. 2814 ( describing the public nature of criminal trials as giving "assurance that the proceedings [are] conducted fairly to all concerned" and as discouraging perjury and the "misconduct of participants"); **Poliquin v. Garden Way,** 989 F.2d 527, 533 (1st Cir. 1993) ("Open trials protect not only the rights of individuals, but also the confidence of the public that justice is being done by its courts in all matters, civil as well as criminal.").

32. It is beyond dispute that most documents filed in court are presumptively open to the public; members of the media and the public may bring thrid-party challenges to protective orders that shield court records and court proceedings from public view. See e.g., **Jessup v. Luther,** 227 F.3d 993, 997 (7th Cir. 2000) ("[T]hose

who seek access to [sealed court] material have a right to be heard in a manner that gives full protection to the asserted right.'" (quoting **In re Associated Press,** 162 F.3d 503, 507 (7th Cir. 1998) (regarding press access to sealed court records).

33. Once a cooperating witness testifies in open court, the need for maintaining the seal lessens because "the public interest in understanding the evidence contributing to a criminal verdict or to a criminal sentence would likely outweigh the interest in cooperator secrecy." **United States v. Lanier,** 2019 WL 4415427, p. 4 (Slip Copy) (09/16/2019).

34. Accordingly, the court "must carefully balance the competing interests that are at stake in the particular case." **Siegle,** 147 F. 3d at 10.

### ARGUMENT

35. It is well established law that a ciminal defendant has a right to confront his or her accusers, that the State has a duty to disclose all information that can be used to impeach a witness, and that the State should refrain from misleading the jury. See e.g., **Brady v. Maryland,** 373 U.S. 83, 10 L.Ed. 2d 215, 83 S.Ct. 1194 (1963); **Giglio v. United States,** 405 U.S. 150, 92 S.Ct 763, 31 L.Ed. 104 (1972); **Napue v. Illinois,** 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed. 2d 1217 (1959).

36. Plaintiff filing this motion was denied a fair trial by an unscrupulous prosecutor named Joseph Alesia who was invovled in several wrongful convictions, and who suppressed numerous pieces of evidence favorable to Plaintiff who was facing a possible death sentence. Plaintiff has already uncovered several pieces of evidence that could have been used to impeach both George Hernandez (whom the Illinois Appellate Court called the "essential witness") and Nathan Steffen the Defendant in the above-numbered federal case.

37. Nathan Steffen was released from prison and completely served his sentence in this case nearly a quarter of a century ago. Therefore, the need for any secrecy has certainly dissipated over time.

38. There is no authority that restrains the unsealing of these UNDER SEAL records. In fact, as noted above, all law is to the contrary. The general rule is that anything filed with the court is public.

> It is beyond dispute that most documents filed in court are presumptively open to the public; members of the media and the public may bring third-party challenges to protective orders that shield court records and court proceedings from public view.[]
> This right is derived from the common-law principle that courts are public institutions that operate openly -- a principle codified at 28 U.S.C [Sec] 452 -- and judicially imposed limitations on this right are subject to the First Amendment.
> ...
> [If] documents have been "used in [a court] proceeding," FED. R. CIV. P. 5(d), and consequently the possibility exists that they could "influence or underpin the judicial decision" and they are therefore presumptively "open to public inspection unless they meet the definition of trade secret or other categories of bona fide long-term confidentiality."[]

**Bond v. Utreras,** 585 F.3d 1061, 1075 (7th Cir. 2009) (internal citations omitted).

39. Plaintiff, and the public, have been deprived of the information and/or records that are UNDER SEAL, which may be extremely relevant to Due Process and may constitute further evidence that Plaintiff was denied a fair trial.

40. Without access to those UNDER SEAL records, Plaintiff is severely inhibited in his ability to fully explore the facts surrounding, bias of, and benefits provided to, Nathan Steffen in exchange for Steffen's false testimony in Plaintiff's criminal trial.

41. It is reasonable to believe that the sealed documents in **U.S.A. v. Steffen,** either relate to the above-mentioned suppressed evidence that Plaintiff already uncovered (and which could have been used at trial to impeach Steffen), or additional benefits or deals Steffen received in return for his cooperaion in Plaintiff's case which are still unknown to Plainfiff and which should have been disclosed, but were not, in order to deny Plaintiff impeachment evidence, allowed Steffen to provide perjured testimony, and/or allowed the State to mislead the jury in Plaintiff's case.

42. Steffen was released from prison one month after giving his false testimony in Plaintiff's criminal trial, seemingly without any further proceedings on Stef-

fen's charges of possession with intent to distribute cocaine within 1,000 feet of a secure area and without any formal charges being brought for threatening the mother of his daughter.

43. "When the First Amendment provides a right of access, a district court may restrict access 'only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest.'" **United States v. Morgan, 2008 U.S. Dist. LEXIS 34949 (SD West Virginia)**,quoting **Va. Dep't of State Police,** 386 F.3d at 575 (quoting **Stone,** 855 F. 2d at 180)(emphasis added). " The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position." Id. (citing **Press-Enter. Co. v. Superior Court (Press-Enter II),** 478 U.S. 1, 15, 106 S.Ct. 2735, 92 L. Ed. 2d 1 (1986) ("The First Amendment right of access cannot be overcome by [a] conclusory assertion[.]")).

44. The Fourth Circuit has held that "the First Amendment right of access applies to documents filed in connection with plea hearings and sentencing hearings in criminal cases as well as to the hearings themselves." **In re Wash. Post Co.,** 807 F. 2d at 391. Naturally, this includes testimony given during a sentencing hearing. **Id.** at 389, 391; **United States v. Santarelli,** 729 F.2d 1388, 1390 (11th Cir. 1984) ("[T]he public has a First Amendment right to see and hear that which is admitted into evidence in a public sentencing hearing.")

45. In addition, other courts have held that a motion to reduce sentence pursuant to Rule 35 is analyzed under the more stringent standard of the First Amendment. See, e.g. **United States v. Raybould,** 130 F. Supp. 2d 829, 833 (N.D. Tex. 2000); see also **CBS, Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.,** 765 F.2d 823, 826 (9th Cir. 1985).

46. Accordingly, all of the materials at issue in this case are analyzed under the First Amendment. See **Va. Dep't of State Police,** 386 F.3d at 576 ("district court[s] first 'must determine the source of the right of access with respect to each document []'").

47. As the court stated in **Raybould, 130 F. Supp 2d 829, 831** (N.D. Tex. 2000):

> Few things would cause the public to be more suspicious of our system of criminal justice than to have secret proceedings that lead to special sentencing treatment for select criminal defendants. The public has a vital interest in knowing the details of deals made between the government and criminal defendants that accomplish, or have the potential to bring about, lower punishment than otherwise contemplated by law. If those aspects of a criminal case were to be kept secret, the public and the press would have reason to question the trustworthiness of the judicial process and whether judicial and prosecutorial abuses might be occurring.

48. As mentioned above, to overcome the presumption of openness in a criminal case, a compelling governmental interest must be shown. **Va. Dep't of State Police,** 386 F.3d at 575. "Compelling interests may include the defendant's right to a fair trial, privacy interests of the defendant, victims or other persons, the integrity of significant [government] activities entitled to confidentiality, such as ongoing undercover investigations or detection devices, and danger to persons or property." **United States v. Doe, 63 F.3D 121, 128 (2D CIR. 1995)** (internal quotation marks and citations omitted); **United States v. Morgan,** No. 5:06-CR-00164-02, 2008 U.S. Dist. LEXIS 34949 , at *9-10 (S.D. W. Va. Apr.28, 2008) (Rule 35 motion and related documents.).

49. There is no compelling reason the government can advance for objecting to the unsealing of the Steffen UNDER SEAL pleadings, records, or documents. They were filed years ago. There is no right of Steffen to a fair trial that competes with the presumption of openness. There are no ongoing undercover investigations or detection devices involved in this case where guilt has been adjudicated nearly 25 years ago. Nor, can it be imagined that there exists any present danger to persons or property that would compete with the presumption of openness.

50. This Court can appropriately conclude that the ONLY reason the government might have for opposing the unsealing of the UNDERSEAL pleadings in the Steffen case is the fact that the government does not want Plaintiff Joseph Dole to know what happened in this case, thus depriving him of any benefit he may receive from an argument that basic fairness and due process apply to him. Putting aside the

10.

cruelty of such an argument, it fails any rational, much less constitutional, test for maintaining the sealing of the Steffen pleadings, records, or documents.

Based on the above, Plaintiff Joseph Dole, respectfully requests that this Honorable Court order the unsealing of the UNDER SEAL pleadings, records, or documents referenced above in the Steffen matters.

Date: Nov. 20, 2024.

Respectfully Submitted,

Joseph B. Dole K84446
(Plaintiff, Pro se)
Joseph Dole K84446
Pinckneyville Correctional Center
5835 State Route 154
Pinckneyville, IL 62274

11.

FILED NOV 25 2024 AM 11:58 USDC - FLMD - FTM

Date: November 20, 2024
To: Clerk of the U.S. Dist. Ct. for the
   Middle District of Florida
   Ft. Myers Division
   2110 First Street
   Fort Myers, FL 33901
Re: Case No. 98-83-CR-FTM-17

Dear Clerk,
   Enclosed are the originals and 3 copies of my "Plaintiff's Motion To Unseal Related Records, Pleadings, Or Transcripts, Seemingly Filed Under Seal In The Above-Numbered Case" with 7 Exhibits and Notice Of Proof Of Service And Verification.
   Would you please be so kind as to return 1 copy of each stamped "Filed" for my own records.
   Thank you for your time and assistance.

Respectfully Submitted,
/S/ Joseph R. Dole

From: Joseph Dole K84446
   Pinckneyville Correctional Center
   5835 State Route 154
   Pinckneyville, IL 62274